judge Mills
delivered the Opinion of the Court.
These two causes being similar in circumstances, by agreement are to be considered together.
The complainants; now defendants in errdr, filed each their bill, setting up demands due to them by William Paul of Pennsylvania, arid alleging that he sent a large quantity of iron down the Ohio, by his brother James Paul, who sold part thereof to the keeper of tlie .Penitentiary of this State, and took the securities for. the price thereof in his own name; but that James Paul was only the agent of William; and the debt is his in equity, and that he has failed in business, and they pray decrees liquidating tlieir claims against Wiíliam Paul, and a decree for a satisfaction thereof out of the monies due from the keeper of the Penitentiary.
Against William Paul publication was had, and James Paul answered, asserting that his brother William was greatly indebted to’ him, and on his *165 brother’s failure, his creditors Had attached the iron at Wheeling, on the river, and these attachments or one of them, was compromised by paying out part of the iron in discharge of thé claim; and that he, James, then bought the residue of the iron at Wheeling, from William, at a certain price; and descended the river with it and máde thé sales.
Evidence.
Decree df the circilit courts
Exceptions to a,deposition filed below; not acted on there, but argued in this court.
Depositions must be excepted to in. the circuit court; the exceptions insisted on before or at the hearing, , arid 1 bojudge ought to decide and admit or exclude the depositions, whatever may be his decree on the merits.
On this point thé éontrov'érsy has principally rested; James Paul has attempted to prove that William was really his debtor, and that he had purchased the iron at Wheeling, and therefore was entitled to its proceeds; and the complainants attempted to prove that the sale from William to James Paul wasj.colorable only, to secure the iron and its proceeds from the creditors of William, and tliat there was nó debt due By William to James.
The court below decided that the sale of the iron from William to James, was colorable and fraudulent, and subjected the proceeds thereof to the demands of the complainants against William Paul. To reverse this decree James Paul has prosecuted these writs of error;
, In the progress óí thé causé, the deposition of William Paul was taken by the complainants, to prove that there was no sale of the iron to James, and that the proceeds belonged to him, and it is insisted in this court that this deposition is incompetent and ought not to be read. There is nb evidence in the record, that this objection was insisted on in the court below, and there decided. All that appears is that there were exceptions to the deposition written and filed, and there is no answer thereto. For any thing that appears thesé exceptions might have been waived at the trial.
It has been said in argument, that thesé exceptions were insisted on, that the' court below took this point into consideration, with the mferits, and afterwards rendered a decree upon the merits, hut Ávas silent as to the competency of this deposition.
If this was established it would convict the inferior court of an impropriety which could not receive the sanction of this court.
Anoioutpraenee ds to ex-ccptions (o dii')ositions.
Practice in Kentucky, of taking bills of exceptions in chancery causes, borrowed from the common law courts.
Evidence objected to anu rejected by the court, ought to be taken out of the record, and noted by the clerk as rejected.
By ibc practice in chancery, as long settled in this country, objections to the competency of witnesses or to depositions because they are irregularly taken; must be made in the court below, and when made, ought to be there decided, and the record ought to show that decision, or the deposition be taken from the record.
According to the ancient iihd correct practice, the decree of the chancellor, or some of his orders, or j.jie rCp0rt 0f a master, was used to shew that süch . S . , , ,, - .. , ,, . exceptions were taken, and give the answer to their truth or falsehood, and the admission or rejection O'f the depositions with the'reasons thereof. If this appeared to have been done in this cdurt, it would obviate all difficulty¡- For if they tvere brought here, the record accompanying them would show that they were objected to, and the grounds of these objections, and thus this court could revise the opinion of the court below.
In this country, however, ílié inferior courts and their solicitors in chancdry, have borrowed from the proceedings in a court of common law, a practice which does not belong to a court of chancery, and admit of bills of exception to the opinion of the court below, admitting or rejecting the depositions' or exhibits objected to, and these bills of exception state the whole grounds of objection and the facts in support thereof, whereby it can he seen in this court whether the evidence was properly admitted or rejected.
Biit as these objections to the admissibility of evidence must be taken in the court below; and cannot be made in this court, for the first time, it is evident, that if the party making the objection waives it in the court below, the record need not say any thing upon the subject; dr if the court rejects the evidence, and the party objecting submits to the decision, and does not intend further to insist on the evidence offered, either in that court or this, the evidence rejected may be taken from the record, and noted by the clerk as rejected.
At whatever time the question of evidence is insisted on, the judge ought to decide it.
If the circuit court fail to decide on exceptions to depositions, this court presumes the exceptions wore waved-
Debtor, whose debt a creditor seeks to have made out of property claimed by a third person, is interested to subject the property, and not a competent witness for the cred ilor.
In no case, however, where exceptions to evidence are taken either before or on the hearing, and snbfnitted with the merits, ought the court below lo be silent, and give no answer thereto. For whether the evidence be admitted or rejected, it affords the party against whom the decision is, an opportunity of insisting that the record, either by entry thereon, or by the borrowed practice of exception, should show the reasons and grounds of decision, if the court shall fail to make the proper enti y thereof on the record. If on the contrary, the court shall be silent, as is alleged to be the case here, it is evident that the party objecting is deprived of the opportunity of insisting on the exception in this court, if ruled against him below, or if it is ruled for him in silence, he is liable to have his case tried here on evidence excepted to, and rejected below, appearing here as if no objection had been made at all.
But here is only exceptions to the deposition appearing in the record, and nothing more. We have seen what it was the duty of the court to have done, if these exceptions were insisted on; and the court not having shewn any decision thereon, is evidence to us, that the exceptions were not urged. For we must presume that that court did right till the contrary appears. The deposition of William Paul cannot, therefore, lie rejected here as incompetent, and we can only .use his interest so far as it affects his credibility.
That lie is interested and that in favor of the party attempting to use him as a witness, we have no doubt. It appears that before his deposition was -taken, in a suit brought by James Paul against him, in the State of Pennsylvania, and closed by arbitration, he liad claimed and obtained against the demands of James Paul in that suit, a full credit for the price of this iron sold to James Paul at Wheeling, and thus had ¡received the benefit of this iron. If by his testimony here, he could again subject the price of that iron to the demands of his creditors, he would reeéive its value twice instead of once, which gives him a direct interest.
One having of°fundseSof0n an insolvent as bis agent, or being Ins transaction, may retain on other ac*13 counts a- ’ gainst a'ny other credit-of his^equaHty in equity and ad vantage at law.
In such case, ah"u<í°mont°f of'a s'jster state in favor of™ch Sobtor'of°tho insolventparty, obtained insolent 6 pending the suit of the ors to subject the demand is[prima facie. proof of tho, debt.
*168 Add to this, his testimony is fatally impeached on other points. He swears distinctly that he did not appropriate ten tons of the iron at Wheeling to discharge the demands of I. B. Trevor & Co. who had there, as creditors, attached the cargo; but that tjlc attachment was dismissed without it, when it is clearly proved by one of the partners of that firm, that he did malm such disposition of that quantity, and his written transfer, under his hand and seal, is produced, establishing these facts beyond contradiction. Under such circumstances we have no hesitation in rejecting his testimony as wholly unworthy of credit.
Proceeding to consider the cause with this deposiifon rejected, we do not deem it very material to decide whether James Paul was only the agent of William, for the purpose of transporting and vend-fog the iron here, or whether he bought the iron at Wheeling and was to account for it at a stipulated price. For if ne was but the agent, as the coinplainants contend, yet if William Paul is really indebted to him, and has failed, we cannot perceive -°n what principle this fund can be taken out of his bands till his demands are ‘ satisfied. As a creditor fog equity must be equal to the claims of the complainants, and the possession, or rather the legal title to the notes of the keeper of the Penitentiary fo fo film, and therefore, between equal equities the jaw ulust prevail, and he must be allowed to retain till his demands are satisfied.
That William Paul was his debtor, is established beyond contradiction. Before this suit was brought, or rat^ier before any notice of it, James Paul had sued William, in the court of quarter sessions and common pleas, of Fayette county, Pennsylvania. That suit, which appears to have been earnestly prosecuted .on one side and defended on the other, was finally closed by an award of arbitrators and judgment thereon, long before this sujt was decided ú¡ the court below, and that judgment is in favor of James Paul, for a balance after William was allowed a foil credit, for the whole price of this iron. This dec^fon, before a competent tribunal of a sister State,
Where the fund attached, to subject which the jurisdiction of the court is claimed, escapes, the court can proced no farther, but shall dismiss the suit without prejudipe.
Mandat*.
Brown, for plaintiffs; Talbott, for defendants.
must be held conclusive of the question of debt and credit, as between James and William Paul, and must operate against the complainants here, so far as their claims depend on the question of debt or no debt, from William to James. For if James does not owe William the price of this iron, then these creditors have no claim thereto. It is true, that suit in Pennsylvania was closed after these were commenced, but was brought before notice of any pending contest here; and these complainants took no steps to arrest its progress, or to question the corr rectness of the demand by any proper allegations iq their bills in these causes; nor is it pretended that the proceeding was collusive and not. in good faith, .of course we cannot fail to give that record full faith and credit, and these complainants are not entitled to subject this fund due frqm the keeper of the Penitentiary.
As this fund cannot be subjected, we dismiss the controversy without inquiring into the merits of the claims of these creditors, because no other relief can be given them. The jurisdiction of a court of equity over the controversy, rests entirely on whether the fund attached can or cannot be subjected. If the fund can be reached, the chancellor will liquidate •thejelaim of the creditor, and decree its satisfaction out of the fund attached. If on the contrary the fund escapes, the jurisdiction of the chancellor goes with it, and lie declines going further. No decision, therefore, which we could give on the demands of these creditors against William Paul, would or could conclude the rights of the parties, the demands being purely legal, and they cannot, therefore, be prejudiced by any other decree we could render.
The decrees of the court below must, therefore, be reversed with costs, and these causes be remanded with directions to the court below, to dismiss each bill with costs and without prejudice to any future suit of the complainants against William Paul, for the same demands set up against him in their bills.